IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

HOLDER PAUL CROW                                                    PLAINTIFF

v.                          Civil No. 5:25-cv-05053-TLB-CDC

TRACEY ROBISON, Charge Nurse; and
TURN KEY HEALTH CLINICS, LLC                                       DEFENDANTS

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions

of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, Chief United States District

Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.  Currently before the Court are the Motion for Summary Judgment (ECF No.

27) filed by Defendants Tracey Robison and Turn Key Health Clinics, LLC ("Turn Key"), as well

as their Brief in Support (ECF No. 28) and Statement of Material Facts in Support (ECF No. 29).

Also before the Court are Plaintiff Holder Paul Crow's Motion for Summary Judgment (ECF No.

35) and Defendants' Response in Opposition (ECF No. 36) and Statement of Material Facts in

Opposition (ECF No. 37).  For the reasons given below, the undersigned recommends that

Defendants' Motion be **GRANTED** and that Plaintiff's Motion be **DENIED**.

## I.  BACKGROUND

Plaintiff's Complaint (ECF No. 1) brings one claim, concerning medical issues he

experienced while incarcerated at the Benton County Detention Center ("BCDC").  Specifically,

Plaintiff alleges that while at the BCDC he suffered a hernia, and that "Nurse Tracey Robison

acting in capacity of medical director of [BCDC] employed by TK Health stated that the hernia

surgery I require to be an elective surgery," and therefore "refused to sign off on surgery knowing

1

I needed it." *See id.* at 4–5.  Plaintiff asserts that this constitutes inadequate medical care in violation of his constitutional right to be free from cruel and unusual punishment.  *Id.*  As relief, Plaintiff seeks $100,000.00 in compensatory damages for pain and suffering, plus the cost of the hernia surgery he wishes to undergo, as well as $20,000.00 in punitive damages.  *See id.* at 9.  Defendants have moved for Plaintiff's claim to be dismissed with prejudice on summary judgment.  *See* ECF No. 27.  Plaintiff filed a document that he styled as a motion for summary judgment, but which appears in substance to be a response in opposition to Defendants' motion.  *See* ECF No. 35.  Both motions are now ripe for decision.

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

2

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

Defendants supported their Motion with extensive medical records from Plaintiff's time at the BCDC, the authenticity of which Plaintiff does not dispute.[1]  Those records establish the following undisputed facts.  Plaintiff suffered a hernia on or about July 28, 2024, while he was incarcerated at BCDC, and four days later, on August 1, he filed a medical request to see a nurse. *See* ECF No. 29-1, p. 214.  Later that same day, a Turn Key nurse saw and evaluated Plaintiff's hernia, gave him pain relievers for it, and scheduled a follow-up appointment with him.  *See id.* at 16, 38–39, 61–62.  Four days later, a Turn Key doctor ordered an ultrasound to further evaluate Plaintiff's hernia, which was performed on August 6, 2024. *See id.* at 16–17, 147.  Later that day, a Turn Key APRN ordered naproxen and a scrotal hernia support for Plaintiff. *See id.* at 16–17, 40–41, 62, 147.  Over the next three and a half months, Plaintiff seen by Turn Key medical providers for his hernia at least nine more times, over the course of which period multiple additional ultrasounds were performed, additional medications and support garments were ordered, and one trip to an emergency room was conducted. *See id.* at 18–23, 26–30, 116–17, 126–27, 137–39, 148, 184, 191–210.

On November 23, 2024, Plaintiff filed a grievance with BCDC regarding his hernia, complaining that it was getting progressively worse, giving him unbearable pain, and preventing him from eating or sleeping. *See id.* at 186.  He complained that "[t]his facility has failed to give

---

[1] Plaintiff's Motion/Response states generically that "[t]he evidence is disputed that TK Health medical personnel, including Nurse Robison was indifferent to the Plaintiff's injury," *see* ECF No. 35, ¶ 2, but does not dispute the authenticity of any medical records provided by Defendants nor the accuracy of any facts provided in Defendants' Statement of Material Facts (ECF No. 29).  His Motion/Response also includes what appears to be a request for additional discovery, *see* ECF No. 35, ¶ 4, but this comes several months after the deadline to conduct discovery has expired, *see* ECF No. 17, § I.C.

me the appropriate medical attention." *See id.* The following day, in response to his grievance, Defendant Robison offered to move Plaintiff to the medical pod so Plaintiff could more easily lie down as needed, but Plaintiff refused this offer. *See id.* at 227; ECF No. 29-2, ¶ 10. Defendant Robison then responded the next day to Plaintiff's grievance as follows:

> This Pt has been seen by the provider 5 times, had 4 [ultrasound tests], and been seen in the ER for his hernia. We have provided him with a hernia belt and offered medical housing so he can lay down as needed. He refused medical housing and a refusal is noted in the chart.

*See* ECF No. 29-1, p. 186. On November 25, 2024, Plaintiff submitted another grievance, stating that he wished to appeal the prior one because "I need surgery" and "every day my situation worsens." *See id.* at 240. BCDC denied Plaintiff's appeal, stating that "[y]our condition has been reviewed by multiple providers and has been deemed non-life threatening. Your hernia surgery repair is considered an elective surgery and can be treated upon release." *See id.* at 240. On November 26, 2024, a Turn Key doctor reaffirmed this conclusion, determining that Plaintiff had a "small right hernia suspected. This is self-reducing and can be repaired after release." *See id.* at 148.

Plaintiff was seen or evaluated by Turn Key providers at least four more times relating to his hernia over the next two months. *See id.* at 23–25, 30–31. On February 23, 2025, Plaintiff drafted and signed the Complaint initiating this lawsuit, which was filed on March 10, 2025. *See* ECF No. 1, p. 11. As previously mentioned, Plaintiff's claim in this lawsuit is that deliberate indifference was shown to his medical needs, in violation of his constitutional rights, when Defendant Robison "stated that the hernia surgery I require [is] an elective surgery" and "refused to sign off on surgery knowing I needed it." *See id.* at 4–5.

The Eighth Amendment governs prisoners' claims of deliberate indifference to medical needs generally, but the Fourteenth Amendment governs such claims when they are brought by pretrial detainees. *See Perry v. Adams*, 993, F.3d 584, 587 (8th Cir. 2021). However, the same

analytical standard applies to such claims regardless of which Amendment is properly invoked. *See Barton v. Taber*, 908 F.3d 1119, 1123–24 (8th Cir. 2018). To establish a constitutional violation based on deliberate indifference, a plaintiff must show that he suffered from an objectively serious medical need and that the defendant had actual knowledge of that need but deliberately disregarded it. *See Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018). "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence in diagnosis or treatment does not rise to the level of an Eighth Amendment violation, nor does an inmate's mere disagreement with the course of his medical treatment. *See id.*

The Eighth Circuit has directly addressed whether refusal to provide surgery for a reducible hernia constitutes deliberate indifference to a serious medical need. In *Hancock v. Arnott*, the Eighth Circuit affirmed the district court's finding on summary judgment that the prisoner did have an objectively serious medical need for surgery to repair his reducible hernia, because he did not present any evidence that any delay in his hernia repair surgery created any excessive risk of harm or changed his prognosis. *See* 39 F.4th 482, 487 (8th Cir. 2022). (By contrast, the defendants in *Hancock* introduced evidence that although the plaintiff did have a hernia, surgical repair was not required during his incarceration because there were never changes to the plaintiff's vitals, he engaged in physical activity without difficulty, and was not at any imminent risk of harm or to his health or well-being. *See id.*) However, the Eighth Circuit also held in the alternative that even if the plaintiff's hernia constituted a serious medical need, it was indisputable that the defendants did not deliberately disregard it, because he received adequate care for that need. *See id.* at 488.

Specifically, the uncontroverted evidence showed that he "was seen by the jail physician or nurses more than thirty times and made only intermittent complaints related to his hernia," and that although he did experience pain, "objective observations did not indicate" that his pain was "severe" or that he was "forced to limit his activities." *See id.*

The facts of the instant matter are strongly analogous to those in *Hancock*—so much that *Hancock* is controlling and dispositive here. As discussed above, and like in *Hancock*, Defendants here gave Plaintiff medical attention on many different occasions and provided him with extensive treatment for his hernia; but they simply declined to provide him surgical repair for it, concluding that such a procedure was elective because the hernia was reducible. And like in *Hancock*, Plaintiff intermittently reported pain from the hernia, but there is no evidence in the record that the lack of surgery placed him at any imminent risk of harm, worsened his prognosis, or even caused him to limit his activities. Indeed, Plaintiff even refused the first pain medicine that he was prescribed, *see* ECF No. 29-1. p. 26, and later declined Defendants' offer to be placed in a medical pod. And when seen by a Turn Key nurse several weeks after filing this lawsuit, he reported experiencing hernia pain at a level of only 1 on a scale of 1 to 10. *See id.* at 25–26. In accordance with *Hancock*, then, the undersigned believes this Court must find that even if Plaintiff's hernia constituted a serious medical need, it is indisputable that Defendants did not deliberately disregard it by declining to provide him surgical repair for it. Thus Plaintiff did not suffer any violation of his constitutional rights, and his claims must be dismissed on summary judgment.

## IV.  CONCLUSION

Accordingly, it is recommended that Defendants Tracey Robison's and Turn Key Health Clinics, LLC's Motion for Summary Judgment (ECF No. 27) be **GRANTED**, that Plaintiff Holder Paul Crow's Motion for Summary Judgment (ECF No. 35) be **DENIED**, and that Plaintiff's Complaint (ECF No. 1) be **DISMISSED WITH PREJUDICE**.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this **8th day of April 2026**.

/s/ *Christy Comstock*

HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE